**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | |
|---|---|
| **JASON L MILLER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-1457 PLC |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant, ) | |

**MEMORANDUM AND ORDER**

Plaintiff Jason L. Miller seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.     Background and Procedural History**

On March 6, 2018, Plaintiff filed an application for DIB, alleging he was disabled as of February 15, 2017, due to degenerative disc disease of the lumbar spine. (Tr. 24, 370, 487) The Social Security Administration (SSA) initially denied Plaintiff's claim in June 2018, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 413-417, 420-421) The SSA granted Plaintiff's request for review and conducted a hearing in July 2019. (Tr. 365-397)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

In a decision dated August 28, 2019, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from February 15, 2017, through the date of this decision." (Tr. 24-33)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-5)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

Plaintiff, born August 12, 1980, testified that at the time of the incident, he was working for Jahnsen Masonry as a mason tender.[2]  (Tr. 371-372)  In that position he set scaffold, "carried block", made mortar, and serviced the bricklayers to ensure they had everything they needed. (*Id.*)  The job involved mainly standing, and lifting from 30 to 110 pounds throughout the day. (Tr. 372, 375)[3]

Plaintiff testified that on May 10, 2016, he stepped into a hole while carrying a large precast stone and twisted his lower back. (Tr. 371, 494, 693)[4]  Plaintiff underwent spinal fusion surgery on July 28, 2017 and July 31, 2017, and has titanium screws and rods in his lower back from his S1 up to his L5, that severely limit his mobility. (Tr. 376, 377)  When the ALJ asked why he refused to undergo a CT scan to evaluate the fusion, Plaintiff stated that he did not want to expose himself to more radiation, especially because he was unwilling to undergo additional surgery. (Tr. 377-378)

---

[2] Plaintiff was in a union as a brick mason laborer for 17 years. (Tr. 375)
[3] Plaintiff testified that in his job he was always walking and climbing. (Tr. 375)
[4] Plaintiff had a history of intermittent, infrequent low back pain with no leg pain prior to the work accident, due to an automobile accident at age 20. (Tr. 28)

2

Plaintiff listed his medications as Gabapentin, Baclofen, Cymbalta, Ibuprofen, Atrovastatin, and Linsopril. (Tr. 379) He did not report suffering side effects from any of his medications. (*Id.*)

With respect to activities and household chores, Plaintiff stated that his children "do pretty much everything for me." (Tr. 379) Specifically, he testified that his son helps him put on his socks, and he wears slip-on shoes because he cannot reach his feet to tie shoelaces. (Tr. 382) Plaintiff reported leaving the house once a day, possibly twice, to go to the gas station and get a drink. (Tr. 379, 380) He stated he was unable to sit for longer than 15-20 minutes, because he needed to keep his legs straight.[5] (Tr. 380-381) He claimed to spend most of his time in a recliner, laying down and "keeping everything straight", because any form of activity caused pain. (Tr. 376, 378, 381, 383)[6] Finally, Plaintiff testified that he was unable to perform sedentary work, because that requires a great deal of leaning forward which causes him pain. (Tr. 383)

A vocational expert testified at the hearing. (Tr. 384-396)[7] The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and past work experience, with the following limitations:

> This hypothetical individual can lift up to ten pounds occasionally. Stand walk for about two hours and sit for up to six hours and in an eight-hour workday with normal breaks. This hypothetical individual can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. This hypothetical individual can occasionally balance, stoop, kneel, and crouch but never crawl. This hypothetical individual should avoid exposure to excessive vibration. This hypothetical individual should avoid exposure to operational control of moving machinery, unprotected heights, and exposure to hazardous machinery.

---

[5] Plaintiff acknowledged that his doctor restricted him to one to three hours of sitting per day, but stated his capabilities were less than that. (Tr. 381)
[6] Plaintiff testified that if he bent his left knee while walking it would buckle, causing him to fall. (Tr. 377)
[7] Plaintiff's attorney refused to stipulate to the vocational expert's qualifications to testify, based on her limited experience and recent education. (Tr. 387-389) The objections were overruled, however, and Plaintiff does not renew them here.

3

(Tr. 390)  The vocational expert stated that such an individual would not be able to return to any of Plaintiff's past work, but that there existed other unskilled jobs in the national economy that he could perform, such as addresser, document preparer, and "touch up screener."[8]  (Tr. 390-391)  The vocational expert further opined that the jobs she identified would allow a maximum of one absence per month, up to four to seven per year (with less during the probationary period), and a maximum of ten percent time off task.  (Tr. 391)[9]

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his Statement of Uncontroverted Material Facts, all of which the Commissioner admitted.  (ECF Nos. 29, 34-1)  The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III.    Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in

---

[8] The vocational expert noted that all of her proposed jobs were classified as sedentary.  (Tr. 390-391)

[9] Plaintiff's attorney questioned the vocational expert extensively regarding where she obtained her jobs listings, but Plaintiff does not raise any challenge on that basis here.

4

any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th

5

Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(g).

### IV.   The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff: (1) had not engaged in substantial gainful activity since February 15, 2017, the alleged onset date; and (2) had the severe impairment of degenerative disc disease in the lumbar spine, that significantly limited his ability to perform basic work activities as required by SSR 85-28. (Tr. 26) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

6

The ALJ found that, although "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 28)  For example, the ALJ noted that although Plaintiff complained of weakness, strength testing throughout the relevant time period showed he possessed normal strength.  (Tr. 30)  Furthermore, while Plaintiff complained of numbness, testing showed no active radiculopathy.  (Tr. 28, 30)  Finally, the ALJ acknowledged that Plaintiff's allegations of pain were subjective, but found the extent claimed was "somewhat inconsistent with the treatment record."  Plaintiff continued working for several months after the accident before seeking treatment[10], and did not seek further treatment after his release from his worker's compensation doctor for almost a year.  (Tr. 30)

As further support for his determination the ALJ noted there were issues with Plaintiff's compliance with treatment recommendations, as the records revealed that Plaintiff:  (1) failed to comply with his doctor's orders designed to facilitate bone fusion and expedite recovery; (2) failed to cooperate in efforts to assess his progress for his worker's compensation case; (3) failed to see a doctor for almost a year after being released from his worker's compensation doctor; (4) refused to have tests designed to help him improve and return to work; and (5) refused to have a follow-up CT scan.  (Tr. 30)

The ALJ considered the medical opinions in the record, and found that Dr. Brett Taylor's June 27, 2018 opinion was "persuasive because it is consistent with the objective medical records."  (Tr. 30)  As relevant here, the ALJ reported that Dr. Taylor stated Plaintiff could sit only

---

[10] The ALJ found Plaintiff's pain "became disabling only after his worker's compensation evaluation and surgery." (Tr. 30)

7

occasionally, defined as 1-3 hours per workday. (Tr. 30) The ALJ found the State agency medical opinion dated June 6, 2018 was "mostly persuasive because it is generally consistent with the objective medical records. (Tr. 31)[11]

After reviewing Plaintiff's testimony and medical records, the ALJ determined that Plaintiff had the RFC to perform sedentary work as follows:

> The claimant can lift up to 10 pounds occasionally. He can stand/walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. He can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel and crouch, but never crawl. He should avoid exposure to excessive vibration. He should avoid operational control of moving machinery, unprotected heights and exposure to hazardous machinery.

(Tr. 27) Based on the vocational expert's testimony, the ALJ found that Plaintiff could not perform any past relevant work, but had the RFC to perform jobs that existed in significant numbers in the national economy, such as addresser, document preparer, and touch up screener. (Tr. 31-32) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 15, 2017, through the date of his decision. (Tr. 32)

**V.     Discussion**

Plaintiff claims the ALJ erred in determining his RFC because substantial evidence did not exist in the record to support the RFC determination. (ECF No. 28) The Commissioner counters that substantial evidence supported the ALJ's RFC determination. (ECF No. 34)

A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable

---

[11] The State agency medical consultant, Dr. Donna McCall, D.O., opined that Plaintiff could sit for six hours in an eight-hour workday. (Tr. 404)

mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id.* (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. RFC Determination

Plaintiff claims the ALJ erred in determining his physical RFC because the finding was not supported by substantial evidence. More specifically, Plaintiff contends the ALJ erred by improperly evaluating the medical opinion evidence, resulting in a determination that Plaintiff possessed the RFC to perform sedentary work.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

9

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citations omitted). However, "[a]n ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

The ALJ stated that he had reached his conclusion "[a]fter careful consideration of the entire record[.]" (Tr. 27) The record contains a work status report that Dr. Taylor, Plaintiff's treating physician, completed on June 27, 2018. (Tr. 805) As relevant here, Dr. Taylor opined that Plaintiff could sit only occasionally, meaning 1-3 hours daily. (*Id.*)

The ALJ found that Dr. Taylor's June 27, 2018 report was "persuasive, because it is consistent with the objective medical records." (Tr. 30) Despite this finding, in posing his hypothetical during the hearing the ALJ asked the vocational expert to consider an individual who could stand and/or walk for about two hours, and sit for up to six hours in an eight-hour workday (with normal breaks). (Tr. 390) The ALJ never modified the hypothetical to incorporate Dr. Taylor's restriction that Plaintiff was capable of sitting only 1-3 hours in an eight-hour workday.

As noted above, in reviewing the Commissioner's ruling, the Court's task is to determine whether the Commissioner's denial of benefits is supported by substantial evidence. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005).  "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Id.* (internal quotation marks and citations omitted).

The ALJ found Plaintiff was capable of sedentary work, which he described as including the ability to sit for up to 6 hours in an 8 hour workday, with normal breaks.[12]  (Tr. 27)  However, the ALJ simultaneously concluded that Dr. Taylor's assessment that Plaintiff could sit for only 1-3 hours per workday was persuasive.  The ALJ did not reconcile his conclusion that Plaintiff is able to sit for up to 6 hours in an 8 hour workday with Dr. Taylor's contrary conclusion.  Accordingly, the Court is unable to determine whether the RFC was supported by substantial evidence on the record as a whole.  The Court therefore remands the matter for further proceedings to resolve the conflict.  *Id.*[13]

## VI.   Conclusion

Accordingly, for the reasons stated above,

---

[12] Under the regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).  Social Security Ruling 83-10 further explains that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8 hour workday."  1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

[13] On remand, the ALJ further is instructed to explain his finding of no radiculopathy, despite the numerous instances in the record where it was noted to exist. (*See, e.g.*, Tr. 711, 753, 802, 809)

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of February, 2023.